JANVIER, Judge.
This litigation results from a contract under which the plaintiff leased to the defendant a piece of machinery known as a bulldozer and, in the agreement, gave to the defendant the right to purchase the machine and to apply on the purchase price such amounts as may have been paid for rental.
Edwin R. Grant, the plaintiff, alleges that Stanley Emmons, the defendant, is indebted to him in the sum of $263.30, $200 of which represents rental for one month, and the balance, $63.30, is made up of charges for parts - and services rendered by the plaintiff to the defendant while the defendant was using the said machine under the said contract.
The defendant admits the execution of the contract and admits there was due to plaintiff monthly rental amounting to $200, but avers that he tendered the said amount to the plaintiff and that plaintiff not only refused to accept the payment but illegally and, without resorting to legal process, seized the machine and thus deprived defendant of its use. Defendant then, assuming the position of plaintiff in reconvention prays for judgment against *158 plaintiff in the sum of $7,700, which he avers represents the loss he sustained as the result of being illegally deprived of the use of the machine. He also contends that, though the contract appears to be one of rental of the machine, it was in reality a sale with the understanding that the purchase price would be paid on a monthly basis.
In the First City Court of New Orleans there was judgment in favor of plaintiff and against defendant as prayed for in the sum of $263.30, with interest and costs, and the reconventional demand was dismissed. Defendant appealed suspensively and devolutively.
The record shows that at some time prior to May 7, 1952, Grant and Emmons entered into an agreement, apparently verbal, under which Emmons was to have the use of the bulldozer and was to operate it in such contracts as he might obtain and was to give to Grant ten per cent of such gross profits as might result. On May 7, 1952, Grant and Emmons entered into the written contract to which we have already referred, under which Emmons leased the machine to Grant for a monthly rental of $200. In the agreement it was not stipulated whether the rent should be paid in advance or at the end of each month. The contract provided that should Emmons desire to do so, he might purchase the machine for $3,030 and that should he so decide, such amounts as had been paid as rental should “be applied towards the purchase price.” The monthly rental from May 7th to June 7th and from June 7th to July 7th was paid.
It is the contention of Grant that on the night of August 7th, in a conversation at his home, he was told by Emmons that “he didn’t want the equipment any more.” Grant says that Emmons told him to come and get the machine. On the next morning Grant engaged an employee of a private agency to watch the machine, and on the following day he took it back into his possession.
It is the contention of Emmons that he did not tell Grant that he should take back the machine. He says that he told Grant that he was using it in various contracts which he had obtained and he also says that he tendered to Grant payment of the monthly rental of $200.
If, without the consent of Emmons, Grant took the matter into his own hands, and, without resorting to legal process, deprived Emmons of the possession and use of the machine, he would be liable to Emmons for such damage as he sustained. On the other hand, if Emmons told him that he no longer needed the machine and that Grant should take it back, there would be no liability in Grant as a result of his having taken the machine into his own possession without resorting to legal process.
The question then is solely one of fact, and we find nothing in the record which justifies the conclusion that on this question of fact the finding of the trial judge is manifestly erroneous.
On the contrary, the record convinces us that the conversation on which Grant relies actually took place and that Emmons authorized him to take back the machine. Grant’s statement is corroborated by Mrs. Grant who says that Emmons told Grant that he wotád not pay the rent for the month ending on August 7th, and said “as a matter of fact you can come and get your bulldozer.”
Emmons offered no corroboration of his version of the conversation, and we find this quite remarkable since he admits that a conversation took place and says that at that conversation his brother was present. He says that he asked his brother to accompany him because he thought that Grant “was going to give me trouble and I wanted a witness.” Yet he failed to produce his brother as a witness.
Counsel for Emmons complains that certain checks, which he intended to offer in evidence, were improperly excluded by the Judge a quo. He says that after he had announced that he had closed the case for defendant, he realized that he had not *159 offered in evidence those checks and that he requested an opportunity to offer them. The record shows that the Judge then said: “The case is closed.”
Since the checks had been referred to by some of the witnesses, it seems to us that in the exercise of his discretion the trial Judge should have admitted them in evidence. However, they are all actually in the record and our examination of them does not disclose that had they been admitted in evidence they would in any way affect the conclusion reached by the trial Judge and by us. One of the checks for $200 is dated August 7th, but it has never been presented for payment by any one and was still in possession of Emmons at the time of the trial, and it is quite possible that it could have been prepared afterwards to bolster Emmons’ contention that he tendered the rental payment on that night. The other checks are for odd amounts and counsel for defendant says that the total amount of all of these checks is more than would have been due at the rate of $200 per mouth, and he also says that on two of them there are notations showing that they were given as part payment on the regular monthly installments on the purchase price of the machine. It is the contention of plaintiff that the two smaller checks, one for $67.50 and one for $42.50, both of which are dated May 7th, represented in part the amount which was then due by Emmons to Grant under the first agreement and do not represent either rental or installment payments on the purchase price under the second agreement.
Our examination of the notations on two of the checks convinces us that these notations y/ere not placed on the checks at the same time at which the main portions of the checks were written. In both instances the notations appear to have been written in a different colored ink and in a different hand.
Our conclusion is that Emmons had not paid the full rental on the machine and that he had not indicated that he intended to exercise his right to purchase it. The record leaves us convinced that Emmons told Grant that he might take the machine back.
There is apparently no dispute over the fact that Emmons is indebted to Grant in the sum of $263.30 for services rendered. Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.